UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER R. MILSTEAD,<br><br>              Plaintiff,<br><br>   v.<br><br>LYNN GUYER; LAWANDA THOMASON; C/O QUINTALL and C/O HARNET;<br><br>              Defendants. | Case No. 3:09-CV-00198-BLW<br><br>**MEMORANDUM ORDER** |

Pending before the Court in the above-entitled matter are a number of motions filed by the parties. The Court will review the history of this case and rule on the pending motions. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**ORDER - 1**

# PROCEDURAL BACKGROUND

Plaintiff Christopher Milstead ("Milstead") filed his Complaint (Docket No. 4) on April 29, 2009, alleging violations of his First Amendment rights, access to the courts and 42 U.S.C. § 1985 and § 1986. The Court conducted an Initial Review of the Complaint and determined Plaintiff had alleged sufficient facts to allow him to proceed against Defendants Lynn Guyer, Lawanda Thomason, Correctional Officer Quintall and Correctional Officer Hartnet on the following claims: 1) violation of his First Amendment right to practice his religion; 2) violation of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); 3) violation of his constitutional right to access to the court and 4) violation of his First Amendment Rights in the form of a retaliation claim. Docket No. 7.

On July 23, 2009, Plaintiff requested a judicially-supervised settlement conference. Docket No. 12. This request was granted by the Court on July 26, 2009 and a settlement conference was scheduled for September 23, 2009 with Chief United States Magistrate Judge Candy W. Dale. Docket No. 17. Plaintiff requested the Court take judicial notice of certain facts. Docket No. 8. On August 29, 2009, the Court denied Plaintiff's request for the Court to take judicial notice, but did grant the Plaintiff thirty (30) days to file an Amended Complaint. Docket No. 18.

As is the District of Idaho's practice with prisoner pro se cases, the Court appointed pro bono counsel to represent Plaintiff at the settlement conference. Docket No. 20. Plaintiff was represented by Patrick Costello and Whitney Power from the

ORDER - 2

University of Idaho Law Clinic.  A settlement was reached on September 23, 2009 and the terms of the settlement were placed on the record.  Docket Nos. 23 and 28.  The Court minutes reflect the parties were to set forth the settlement in writing.  Docket No. 23.

Five days after the settlement conference, Plaintiff filed a pro se Notice to Withdraw from Mediation/Settlement and Motion for Extension of Time to Amend Complaint (Docket No. 22) and a Notice of Fraud Upon the Plaintiff, Notice of Termination of Counsel (Docket No. 23).  Plaintiff alleges he was not aware of the fact that his attorneys were involved in the training of paralegals for the Idaho Department of Corrections ("IDOC") and had failed to raise issues and claims he wanted raised at the settlement conference.  Plaintiff wants to be released from the terms of the settlement that was reached between the parties.  The Court granted Plaintiff's counsel's motion to withdraw.  Docket No. 38.

The motion for extension of time to file an amended complaint was never ruled on by the Court. On October 19, 2009, the Plaintiff filed an Amended Complaint.  Docket No. 36.  Summons were returned executed on Defendants Guyer, Thomason, Quintall and Hartnet.  In the Amended Complaint, Plaintiff added additional individual defendants.  On October 26, 2009, Plaintiff filed a motion for service of his Amended Complaint upon the newly named Defendants.  Docket No. 39.   On that same date, Plaintiff filed Supplement to Notice of Fraud.  Docket No. 40.

On November 6, 2009, Defendants filed a motion to seal documents and a response on the motion for extension of time to file.  Docket Nos. 41 and 42.  In the

ORDER - 3

response, Defendants argue that the motion for extension of time to file should be denied as the parties had reached a settlement on September 23, 2009 and that Plaintiff should be ordered to comply with the terms of the settlement entered into by the parties which was consistent with the settlement made on the record.

On March 30, 2010, Plaintiff filed a motion for Federal Criminal Investigation. Docket No. 50. Defendants filed a response on April 19, 2010. Docket No. 51. No reply was filed by Plaintiff.

On May 14, 2010, Plaintiff filed a notice of change of address indicating he had been released from custody. Docket No. 52. Plaintiff also filed a request for hearing on his pending motions on that same day. Docket No. 53. Plaintiff claims he is still under the care, custody and supervision of the Defendants since he is out on parole. Id.[1]

On May 24, 2010, Plaintiff moved for entry of default. Docket No. 54. Defendants responded to the motion arguing there was no default as Plaintiff agreed to the settlement of the case and Defendants had performed their responsibilities under the terms of the settlement. Docket No. 55. On August 5, 2010, the Court granted Plaintiff an extension of time to file a reply to the Motion for Entry of Default. Docket Nos. 58. On September 2, 2010, the Court granted Plaintiff and extension of time to file a reply to the Defendant's Response to Plaintiff's Notice to Withdraw from Mediation/Settlement.

---

[1] The Plaintiff is under the supervision of the State of Idaho, but he is no longer a "prisoner" as defined by Idaho Code § 18-101A(6) as he is not currently detained by IDOC. Rather, the Plaintiff is a "parolee" who is not incarcerated, but is being supervised by employees of the Idaho Department of Correction. Idaho Code § 18-101A(5).

Docket No. 60. The matter is now ripe for the Court's review.

## FACTUAL BACKGROUND

Plaintiff was convicted of lewd and lascivious conduct with a minor under the age of 16 and sentenced to the custody of the IDOC. Plaintiff alleges that it is IDOC's policy to allow a maximum of 17 books in an inmate's cell. According to Plaintiff, for approximately 10 years while he was incarcerated at the Idaho Correctional Center ("ICC"), he was allowed more than the maximum number of books and legal materials in his cell. When Plaintiff was transferred to the North Idaho Correctional Institution ("NICI") he alleges was not allowed to keep any books over the 17 book limit and was not allowed to store any legal work.

Plaintiff claims certain Defendants confiscated all his religious books, approximately 10 of his legal books and 81 files of legal work. Plaintiff claims he requested additional storage space for active legal work but such request was denied. Plaintiff claims that in retaliation for his request to keep more books and legal work, a commissary order of his was cancelled. Plaintiff also claims he was transferred to a different IDOC facility in retaliation for filing the current lawsuit.

Plaintiff claims the 17 religious book limit and the 6 cubic feet policy for prisoner property violates his First Amendment rights and his access to the courts. Plaintiff also claims the retaliation by Defendants was in violation of his First Amendment rights. Plaintiff seeks monetary and injunctive relief.

## ANALYSIS

**ORDER - 5**

## 1. Notice to Withdraw from Mediation/Settlement and Notice of Fraud Upon the Plaintiff

Plaintiff seeks to withdraw from the settlement reached by the parties on September 23, 2009 on the basis of a conflict of interest between his counsel and IDOC, his failure to execute a written agreement and because believes he has issues that were not resolved by the settlement agreement. The Court will address each argument.

### A. *Conflict of Interest*

Plaintiff seeks to withdraw from the settlement based on an alleged conflict of interest between his pro bono counsel and the IDOC. Defendants disagree that any conflict of interest exists and argue the settlement should be enforced. Under the particular facts here, the Court finds no conflict of interest existed and the settlement should be enforced. Specifically, Plaintiff claims his counsel had a conflict of interest because his counsel failed to raise certain issues he wanted addressed at the settlement conference and because his counsel participated as speakers at a conference for training for prison paralegals. The Court finds neither of the these allegations provides a basis to set aside the settlement.

As is the District of Idaho's practice, the Court appointed pro bono counsel to represent the Plaintiff during the settlement process. Plaintiff did not object to the appointment of counsel for purposes of settlement. Counsel filed a settlement brief with the Court and Plaintiff claims he did not have time to review the settlement brief until after the settlement had concluded. The Court finds the failure of Plaintiff to review the

ORDER - 6

briefing was not material to the settlement negotiations as Plaintiff had ample opportunity to raise other issues he was concerned about with the settlement judge during negotiations or in open court when the terms of the settlement were put on the record. The fact that Plaintiff failed to raise additional issues that he was aware of but counsel may not have included in the settlement briefing filed by his counsel is not a sufficient basis to set aside the settlement.

As to the alleged conflict of interest on the part of Plaintiff's counsel with the IDOC, the Court finds no conflict of interest existed. Counsel did not have a duty to inform Plaintiff they were participating in a conference for prison paralegals. Counsel was one of many speakers at the conference and the University of Idaho Law Clinic regularly represents prisoners in civil rights actions so their participation and familiarity with the paralegal services at IDOC does not create a conflict of interest. Plaintiff also points to the fact that travel expenses of his counsel to participate in the conference were paid by IDOC so his counsel had a conflict of interest. Sponsoring organizations of conferences normally pay the travel expenses of speakers and the payment of these travel expenses does not constitute a financial conflict of interest since there is no evidence counsel was receiving other monies from the IDOC for its representation of Plaintiff. The Court finds Plaintiff has provided no facts or evidence to suggest his court appointed counsel had an actual conflict of interest under the Idaho Rules of Professional Conduct. Nor does the Court find there was the appearance of a conflict of interest wherein the representation provided by court appointed counsel might reasonably be questioned.

**ORDER - 7**

### B. *Failure to Execute a Written Agreement*

Plaintiff argues there is no settlement agreement as he did not execute a written agreement. While it is true the Court minutes reflect the parties were directed to put the terms of the settlement in writing, the failure by Plaintiff to execute a written settlement agreement does not negate the effect of his oral agreement to the settlement terms. In *Doi v. Halekulani Corporation*, 276 F.3d 1131 (9th Cir. 2002), the court held oral settlement agreements are enforceable as set forth in the Court record. It is "well established that an oral agreement is binding on the parties particularly when the terms are memorialized into the record." *Sargeant v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000). Pursuant to Ninth Circuit law, an oral settlement agreement is treated as a contract and enforcement of the contract is governed by local law. *United Commercial Insurance Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). Under Idaho law, stipulations for settlement will be enforced unless good cause to the contrary is shown. *Lawrence v. Hutchinson*, 204 P.3d 532, 538 (Ct. App. 2009).

The record in this case supports a finding there has been no showing of fraud, duress or undue influence on the Plaintiff. The transcript establishes the agreement was entered into in good faith by all parties. All the material terms were placed on the record and agreed to. The Court's request for a written settlement agreement was not necessary based on the transcript which set forth with particularity the terms of the agreement. Moreover, it would be unfair and unjust to allow Plaintiff to back out of the settlement agreement just because he did not execute a written agreement. The Court finds a valid

oral contract was entered into by the parties and should be enforced by the Court. Plaintiff's request for withdrawal based on his failure to execute a written settlement agreement is rejected and the Court will enforce the terms of the settlement agreement placed on the record.

### C. Additional Issues Were Not Addressed

Plaintiff complains that he also had issues relating to his right to practice his religion that were not resolved in the settlement conference. However, it is unclear what issues these would have been based on the claims set forth in Plaintiff's Complaint as the issues in the Complaint were all resolved by the settlement agreement. In fact, the settlement addressed some issues related to medical complaints that were clearly beyond the scope of the claims in the Complaint.

A review of the Court record does not support Plaintiff's argument. The Court asked the Plaintiff directly and more than once if there were any other issues or matters to raise regarding this Complaint and Plaintiff responded there were not. The fact that Plaintiff now has thought of some other issues he wants addressed is an untimely request. Further, Judge Dale asked Plaintiff after the terms of settlement were put on the record if he would sign a stipulation for dismissal with prejudice and he replied in the affirmative. Because all of the claims of Plaintiff allowed by the Initial Review Order, plus some medical concerns[2], were addressed by the settlement agreement, this basis for

---

[2]The Court notes Plaintiff was not required to waive his rights or claims relating to his medical claims as part of the settlement agreement. The settlement agreement merely

withdrawing from the settlement is rejected.

Plaintiff alleges in his reply brief, Docket No. 59, that even though he is on parole, he is "still refused and denied the ability to attend religious services at any church, synagogue or other place of worship in the State of Idaho as ordered by the Defendants through Probation and Parole." The Court takes Plaintiff's allegation very seriously. Plaintiff's state court conviction was for lewd and lascivious conduct with a minor under 16 years of age. The Court is aware that probation and parole terms regularly have restrictions on allowing sex offenders to attend religious services where children would be present until certain requirements are met such as sex offender treatment, approval by the probation officer, acknowledgment by the leader of the church services, etc. Plaintiff is encouraged to work with his parole officer to determine what religious services are available for him to attend (i.e., a men's religious study group where no children are present) and the requirements he must complete in order to attend services where children may be present. The First Amendment's free exercise of religion clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900 (1940). Based on Plaintiff's status as a sex offender, there may be limits on his rights in order to ensure the safety of the community.

Additionally, Plaintiff cannot amend his Complaint to add these new allegations

---

set forth the steps the Defendants would take to help resolve some of Plaintiff's medical treatment claims.

**ORDER - 10**

after the original Complaint has been resolved.  Plaintiff's Complaint focused on IDOC's policies limiting prisoners from keeping more than a certain amount of religious materials in their cells arguing that limiting the amount of religious books in his cell resulted in Plaintiff being unable to practice his religion.  Plaintiff agreed as part of the settlement to an arrangement allowing him to have a certain amount of religious and legal materials in his cell and a signed memorandum setting forth the arrangement that he could provide to IDOC employees if they thought he was not in compliance with the prison policies.  At the time the case was settled, Plaintiff was still in custody, so any claim relating to his restrictions on practicing his religion after his release were not part of the original action or the settlement agreement to which Plaintiff acknowledged would result in the dismissal of his Complaint.  Accordingly, this newly raised allegation regarding conditions of his parole cannot be addressed by this Court.  To the extent Plaintiff believes his First Amendment rights are being violated by the terms of his parole, Plaintiff can file a new lawsuit regarding such a claim.

### D. *Conclusion*

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."  *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  After reviewing the record in this case, the Court finds the settlement agreement reached between the parties and memorialized on the record should be enforced.  Plaintiff's objections to the enforcement and his request to withdraw from the settlement are without merit.   Therefore, the Court will enforce the settlement agreement

and will dismiss the action in its entirety based on the Defendants' performance of the material terms of the agreement. The Court acknowledges the Defendants were not able to completely perform all obligations under the settlement agreement prior to Plaintiff's release from custody due to Plaintiff's failure to cooperate but this should not be held against the Defendants or prevent enforcement of the settlement agreement.

## 2. Plaintiff's Other Motions

Having found the settlement agreement in this case should be enforced, the Court finds all other pending motions of Plaintiff in this case should be denied as moot.

## 3. Defendants' Motions to Seal Documents

Defendants move to seal certain documents outlined in their motions as such documents involve the terms of the confidential settlement. Plaintiff has no objection to the request to seal documents. For good cause shown, the Court will grant the motions to seal.

## ORDER

Being fully advised in the premises, the Court hereby orders the settlement agreement put on the record on September 23, 2009, shall be enforced and based on the performance of the conditions by the Defendants, the case is hereby DISMISSED IN ITS ENTIRETY. It is further ordered that:

1) Plaintiff's Notice to Withdraw from Mediation/Settlement (Docket No. 22) is DENIED.

2) Plaintiff's Motion for Extension of Time to Amend Complaint and Serve

Defendants (Docket No. 22) is DENIED AS MOOT.

3) Plaintiff's Motion for Service (Docket No. 39) is DENIED AS MOOT.

4) Defendants' Motions to Seal Documents (Docket Nos. 41 and 47) are GRANTED.

5) Plaintiff's Motion for Federal Criminal Investigation (Docket No. 50) is DENIED AS MOOT.

6) Plaintiff's Motion for Entry of Default (Docket No. 54) is DENIED AS MOOT.

7) Plaintiff's claims set forth in the Complaint are deemed resolved pursuant to the settlement agreement of the parties and no further motions will be entertained by the Court.

DATED: **September 29, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge